UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT DAVIS,

        Plaintiff,

vs.

                                       Case No. 13-CV-11760

                                       HON. GEORGE CARAM STEEH

DR. DONALD WEATHERSPOON,
GOVERNOR RICK SNYDER,
ATTORNEY GENERAL BILL SCHUETTE,
AND STATE TREASURER ANDY DILLON,

        Defendants.

_____/

**OPINION AND ORDER DENYING PLAINTIFF'S EMERGENCY
MOTION FOR TEMPORARY RESTRAINING ORDER [DOC. 4]**

       Plaintiff Robert Davis brings this action as both a registered voter of the City of

Highland Park, Michigan, and as an elected member of the Board of Education for the

School District of the City of Highland Park ("District"). Davis' lawsuit, brought pursuant

to 42 U.S.C. § 1983, claims violations of his federal constitutional rights of equal

protection under the law as guaranteed by the Fourteenth Amendment of the United

States Constitution. Davis alleges that his vote in the November, 2012 election was

diluted due to the fact that Michigan's anti-revival statute, MCL § 8.4, was not applied to

the repeal of Public Act 4 of 2011 ("PA 4") by voter referendum in the same way the

statute applies to repeal by the Michigan Legislature.

       Davis filed his complaint on April 18, 2013, and this emergency motion for

temporary restraining order was filed on April 19, 2013. The parties fully briefed the

motion, and the court heard oral argument on May 8, 2013.  For the reasons set forth in this opinion, plaintiff Davis' motion for temporary restraining order is DENIED.

## FACTUAL BACKGROUND

On January 12, 2012, Defendant Governor Snyder appointed Jackie Martin to serve as the emergency manager (EM) for the District under the authority of PA 4.  On May 10, 2012 EM Martin resigned and Snyder appointed Joyce Parker as successor EM pursuant to PA 4.  On August 3, 2012, the Michigan Supreme Court issued its order ordering the State Board of Canvassers to certify petitions and place on the ballot a referendum on PA 4.  The State Board of Canvassers certified the petitions on August 8, 2012.  By operation of law, upon such certification, PA 4 was suspended pending the vote in the November, 2012 general election.  Mich. Const. 1963, art. 2, § 9; MCL § 168.477(2).

Two days prior to the certification of the petitions, on August 6, 2012, Defendant Attorney General Schuette issued a formal opinion that once the petitions were certified, Public Act 72 ("PA 72") would be temporarily revived, and that it would remain in effect permanently if the voters repealed PA 4 at the November, 2012 election.  Schuette's opinion states that Michigan's anti-revival statute, MCL § 8.4, "addresses the repeal of a statute by a subsequent statute, not the nullification of a statute by a referendum." (Opinion No. 7267) The Attorney General opined that MCL § 8.4 prevents the revival of an earlier statute by repealing legislation, but not when the repeal was initiated by voter referendum:

> The disapproval of an act by referendum does not constitute a "legislative enactment" but rather the "disapproval" of a prior legislative enactment. Accordingly, MCL 8.4, on its face, does not apply to a referendum.

(Opinion No. 7267).  This opinion was followed by the Wayne County Circuit Court in *Roy Roberts v. Murray* (Wayne County Circuit Court No. 12-01545-AW), which issued an order finding PA 72 was revived.

Snyder relied on Schuette's opinion that PA 72 was revived and reappointed all existing EMs that were serving under PA 4, as EFMs under the revived PA 72.  The District's EM Parker was thereby converted to an EFM under PA 72.  Parker resigned from her position as EFM for the District on October 29, 2012.  That same day, Defendant Weatherspoon was appointed as the successor EFM for the District under PA 72.

In the November, 2012 general election, the voters voted to repeal PA 4.  On November 10, 2012, Davis filed an action for quo warranto in the Michigan Court of appeals asserting that Roy Roberts' appointment as EFM for the Detroit Public Schools under PA 72 was no longer valid because the repeal by referendum on PA 4 did not revive PA 72.  *Davis v. Roberts*, Court of Appeals No. 313297.  The Court of Appeals considered the issue of revival of PA 72, whether PA 4 was "repealed" or "rejected", and the application of MCL § 8.4, holding the PA 72 was revived:

> Petitioner's reliance on the anti-revival statute, MCL 8.4, is unavailing.
> The plain language of MCL 8.4 includes no reference to statutes that have been rejected by referendum.  The statutory language refers only to statutes subject to repeal.  Judicial construction is not permitted when the language is unambiguous.  Accordingly, under the clear term of the statute, MCL 8.4 does not apply to the voters' rejection, by referendum, of PA 4.  Even if the rejection of PA 4 is deemed to operate as a repeal subject to MCL 8.4, the voters rejected PA 4 in its entirety by way of the referendum.

In December 2012, the Michigan Legislature passed Public Act 436 ("PA 436"), which the Governor signed, and which took effect on March 28, 2013.  PA 436 states

-3-

that it replaces and repeals PA 72.  The new act also provides that EFMs appointed and serving under PA 72 are automatically converted to EMs acting under PA 436.

In the matter before this court, Davis contends that Weatherspoon's initial appointment as EFM under PA 72, made in accordance with Schuette's August 6, 2012 opinion, "was a nullity as it incorrectly stated Michigan law and as a result violated Plaintiff's right to equal protection under the law as guaranteed under the Fourteenth Amendment of the United States Constitution."  (Motion for TRO, p. 5).  Davis argues that PA 72 could not have been legally revived when PA 4 was repealed by the voters because Michigan's anti-revival statute prohibits the revival of a previously repealed statute by the repeal of the subsequent repealing statute.

The constitutional violation alleged by Davis is the denial of his equal protection rights as a voter and as an elected member of the Board of the District.  Davis claims that defendants' improper application of MCL § 8.4 treats the repeal of statutes by the voters differently from repeals accomplished by the Legislature.

In the present proceeding, Davis seeks a temporary restraining order restraining and enjoining defendants from enforcing Schuette's opinion; enjoining Weatherspoon from exercising any authority as EM; and enjoining defendants from applying or enforcing any provisions of PA 436 that recognize appointments made under the revived PA 72.

<u>STANDARD FOR PRELIMINARY INJUNCTION</u>

The decision of whether or not to issue a preliminary injunction lies within the discretion of the district court.  <u>CSX Transp., Inc. v. Tennessee State Bd. of</u>

-4-

Equalization, 964 F.2d 548, 552 (6th Cir. 1992).  In determining whether to grant or

deny an injunction, the district court is required to consider four factors:

>  1.    whether the movant is likely to prevail on the merits;
>
>  2.    whether the movant would suffer an irreparable injury if the court does not
>        grant a preliminary injunction;
>
>  3.    whether a preliminary injunction would cause substantial harm to others;
>        and
>
>  4.    whether a preliminary injunction would be in the public interest.

G & V Lounge v. Michigan Liquor Control Comm'n, 23 F.3d 1071, 1076 (6th Cir. 1994)

(citing International Longshoreman's Ass'n v. Norfolk S. Corp., 927 F.2d 900, 903 (6th

Cir. 1991), cert. denied, 502 U.S. 813 (1991).

## ANALYSIS

I.  Likelihood of Success

    A.  Standing

    Under Article III of the Constitution, a party must demonstrate standing in order to

satisfy the "case or controversy" requirement necessary for a federal court to exercise

its judicial power.  The Supreme Court set forth three elements to establish standing in

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992):

>  (1) Plaintiff must have suffered an injury in fact - an invasion of a legally
>  protected interest which is (a) concrete and particularized, and (b) actual
>  or imminent, not conjectural or hypothetical; (2) There must be a causal
>  connection between the injury and the conduct complained of - the injury
>  has to be fairly traceable to the challenged action of the defendant, and
>  not the result of the independent action of some third party not before the
>  court; and (3) It must be likely, as opposed to merely speculative, that the
>  injury will be redressed by a favorable decision.

Where a plaintiff seeks injunctive or declaratory relief, a heightened standard applies under which the plaintiff must not only show a concrete and particularized injury, but also a substantial likelihood that the plaintiff himself will be injured in the future. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).

The injury alleged by plaintiff is the dilution of his voting power due to defendants' unconstitutional interpretation and application of Michigan's anti-revival statute. Plaintiff argues that the revival of PA 72 "debased, diluted and weakened [his] vote to repeal Public Act 4 in the November, 2012 general election." (Complaint ¶ 22). Plaintiff acknowledges that his vote was counted in the November, 2012 election. Plaintiff also acknowledges that he was aware of Schuette's opinion regarding the permanent revival of PA 72 at the time of the election, so before he voted he knew what the outcome would be if the referendum passed. Finally, plaintiff acknowledges that he is arguing a unique impact on his vote in the form of diminished voter expectations due to the fact that the State does not agree with the position taken by the referendum.

The problem with plaintiff's standing to bring this action is that his asserted protected interest is not "concrete and particularized." Rather than being individually targeted, his alleged injury is shared with over two million members of the statewide electorate. It is speculative for plaintiff to argue that all of the voters expected MCL § 8.4 to be applied such that the repeal of PA 4 would *not* revive PA 72. In light of all of political and legal maneuvering leading up to the election, which was widely covered by the press, the more likely accurate speculation is that the educated voter knew that if PA 4 was repealed PA 72 would be revived. It is reasonable to speculate that the class of voters who voted for the repeal of PA 4 knew PA 72 would be revived if they were

-6-

successful, and they wanted this less intrusive statute which had been on the books since 1990, as opposed to the available alternatives included bankruptcy or PA 4.

For a host of reasons, including the ones discussed above, the court finds it unlikely plaintiff has standing to bring this case.

B. Res Judicata

To the extent plaintiff asks the court to interpret MCL § 8.4 and conclude that it applies to the "repeal" by referendum of PA 4, thereby precluding the revival of PA 72, defendants argue plaintiff's claim is barred by res judicata. Similarly, plaintiff's equal protection claim based on the theory that the "repeal" of PA 4 by referendum was treated differently than a "repeal" by an act of the Michigan Legislature, is also barred by res judicata because plaintiff could have raised this claim in his state court action.

State-court judgments are given the same preclusive effect under the doctrine of res judicata as they "would receive in courts of the rendering state." *ABS Indus., Inc. Ex rel. ABS Litig. Trust v. Fifth Third Bank*, 333 Fed. Appx. 994, 998 (6th Cir. 2009) (quoting *Ingram v. City of Columbus*, 185 F.3d 579, 593 (6th Cir. 1999)). The court must look "to the state's law to assess the preclusive effect it would attach to that judgment." *Id*. The Sixth Circuit summarized Michigan's principles as follows:

> In Michigan, res judicata 'bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first.' [*Adair v. State*, 470 Mich. 105 (2004)]. Michigan 'has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not.' *Id*.

*Ludwig v. Township of Van Buren*, 682 F.3d 457, 460 (6th Cir. 2012).

-7-

Defendants argue that the Michigan Court of Appeals' unpublished order in *Davis v. Roberts,* issued November 16, 2012, addressed the merits of Davis' claim that PA 72 was not revived because it was repealed by PA 4, and MCL § 8.4 applied to bar the revival of PA 72.  The *Roberts* order was a final judgment that disposed of Davis' quo warranto application.  Davis appealed the order to the Michigan Supreme Court, which denied leave to appeal.  The *Roberts* panel addressed the question of whether PA 72 was revived, concluding that it was.

Plaintiff, in this case, argues that his equal protection rights were violated because the repeal of PA 4 by referendum was treated differently than a repeal by an act of the Michigan Legislature.  The issue is whether this equal protection clause claim could have been raised in plaintiff's state court quo warranto action.

*"Quo warranto* is the only appropriate remedy for determining the proper holder of a public office."  *Davis v. Chatman*, 292 Mich. App. 603, 612 (2011).  Plaintiff brought the *Roy Roberts Quo Warranto* case in the Michigan Court of Appeals to test Roy Roberts' entitlement to office of emergency manager.  Plaintiff's position in that case was that PA 72 was not revived because it was repealed by PA 4, and MCL § 8.4 applied to bar the revival of PA 72.  The Michigan Court of Appeals considered and rejected plaintiff's argument.  Plaintiff argues that he could not have made his equal protection clause argument in the quo warranto forum because, "[t]he constitutionality of the statute which creates the office or the constitutionality of statutes which the office is supposed to enforce present separate and broader questions that may be adjudicated in the circuit courts of this state."  *Fosket v. Michigan State Board of Dentistry*, 79 Mich. App. 127, 132 (1978).  The equal protection clause claim is challenging the

-8-

interpretation of the anti-revival statute as unconstitutional.  This is not the statute which creates the office of EM, nor is it a statute which the EM is supposed to enforce.  It strikes this court that it would have been entirely appropriate for plaintiff to have argued that, as a matter of statutory construction, MCL § 8.4 had to be interpreted in such a way to avoid a constitutional defect.  Even if plaintiff is correct that the Court of Appeals would not have considered plaintiff's equal protection clause argument, the fact that it could have been made in that forum is enough for res judicata to bar the claim from being made in this subsequent action.

Finally, privity requires that if the parties are not identical in the two lawsuits, the first litigant must be so identified in interest that he or she represents the same legal right that the later litigant is trying to assert.  *Baraga Co. v. State Tax. Comm.*, 466 Mich. 264, 269-70 (2002).  The plaintiff in both cases is the same - Robert Davis.  The defendant in *Roberts* was Roy Roberts, EFM for Detroit Public Schools appointed by the Governor under PA 72.  The defendants in this case are Dr. Weatherspoon, the current EM for the Highland Park School District, appointed by the Governor under PA 72.  The other defendants are Governor Snyder, Attorney General Schuette and Treasurer Dillon.  These state officer defendants all share a substantial identity of interests and a working relationship given their executive roles and statutory duties under PA 4 and PA 72.  The defendants in this case would advance the same substantive arguments regarding the revival of PA 72 that were made by Roberts in the *Roberts Quo Warranto* case, and would seek the same result, a ruling that PA 72 was revived.

-9-

For the foregoing reasons, it is likely that plaintiff's single claim in this case, that being a violation of the equal protection clause, would be dismissed as barred under the doctrine of res judicata.

C. _Burford_ Abstention Doctrine

Abstention is appropriate where timely and adequate state-court review is available and (1) a case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," or (2) the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." _Adrian Energy Ass'n v. Public Service Comm'n_, 481 F.3d 414, 423 (6th Cir. 2007).

Given the multiplicity of state lawsuits touching on the issues underlying plaintiff's complaint, as well as the history of legislative enactments addressing the State's severe financial situation, the court finds it likely that both _Burford_ scenarios would preclude review of plaintiff's claim in this case.

D. Failure to State a Claim

The crux of plaintiff's claim is that the interpretation of MCL § 8.4 by the Attorney General and the Michigan Court of Appeals, as well as the application of this interpretation by all of the defendants who are constrained to follow it, diminished the meaning of plaintiff's vote in favor of the referendum on PA 4. However, plaintiff does not cite any authority for this theory. Plaintiff readily acknowledges that he knew what he was voting for, and that his vote counted. The bottom line appears to be that plaintiff did not get to vote for what he really wanted, which was to reject PA 4 and have nothing

-10-

replace it.  Plaintiff presumably wanted to have full authority returned to the Board of

Education and Superintendent, but this scenario was not on the ballot.

    As frustrating as the political process has been on the subject of financial

emergencies and emergency managers to many people in the State, it is likely that

plaintiff has failed to state a claim for which relief can be granted.

    E.  Conclusion

    For all of the reasons state above, plaintiff has failed to demonstrate a likelihood

of success on the merits of his equal protection clause claim.

II.  Other Factors

    Plaintiff's claim of irreparable harm is that both the powers of his elected office as

well as the diminishment of his vote are being usurped as a result of EM Weatherspoon

being allowed to continue in his office.  This alleged harm is inextricably intertwined with

the merits of plaintiff's claim for relief.  The court cannot find that plaintiff will suffer

irreparable harm unless it finds that there has been a violation of the Constitution.

Because the court does not find that plaintiff is likely to succeed on the merits of his

constitutional claim, the balance of the factors considered in granting a temporary

restraining order does not favor granting plaintiff's motion.

Dated:  May 14, 2013

                                        s/George Caram Steeh_____
                                        GEORGE CARAM STEEH
                                        UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 14, 2013, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk